So you're taking 10 minutes and then the United States government is taking five minutes, is that correct? That is correct. All right, please proceed. May it please the court, I'd like to reserve one minute for rebuttal. This case should not... Can you state your name, please? Laura D'Agostino for the appellant. Thank you. This case should not have been resolved on summary judgment, your honors, because it turns on disputed facts about how the city's racial initiative affected Mr. Demert's conditions of employment. The United States will address aims and any question about a heightened standard, but the case doesn't turn on that issue. Even under the ordinary Rule 56 standard, the record reflects competing evidence about two main categories of evidence. One, what happened to Mr. Demert? And two, what kind of workplace the city's racial initiative created? If judgment is affirmed on a record like this, it risks effectively closing the courthouse doors to employees facing discrimination by allowing fact-intensive claims to be resolved on paper without a fact finder to evaluate context and credibility. That is not what Rule 56 permits. Beginning with the facts relating to Mr. Demert, a reasonable fact finder could conclude that Mr. Demert experienced race-based discrimination, and that alone precludes summary judgment. Do you concede that if the city didn't know about an incident, it can't be liable for it? Yes, your honor, but that is not the case here. Okay, but what about this one incident about the lunchroom conversation with Consuelo Crow in 2017? There's nothing in the record that appears to show that the city was aware of that incident. In Mr. Demert's declaration, your honor, that's going to be 2ER in the 60s. Mr. Demert relates how he reported throughout his eight-year employment all of these various incidents of discrimination, but nothing was done about it. The city did not launch an investigation. You say reported, reported to whom? To supervisors, leads which operate as supervisors, department managers, anyone that would listen, your honor. And with respect to this particular one with Consuelo Crow, he says that he reported that above? Yes, your honor. Mr. Demert's declaration affirms that, and he is prepared to testify that all of these incidents were reported to the city. There was no investigation launched until he filed this EEOC claim in 2020. Now, under Harris versus Forklift systems, there is a holistic approach that comes to evaluating whether the discrimination impacted the conditions of an employee's workplace. And here, there are not only disputes about material facts, but there are also disputes about what these facts mean in the workplace. And examples include the following. The city claims that Mr. Demert never experienced discrimination in any of its trainings, but Mr. Demert was- I ask you, there was two years between the 2017 incidents and the 2019 incident. So at what point in time does enough time pass such that occurrences that all involve different alleged perpetrators don't count as continuing violations anymore? There isn't a clear-cut standard, your honor. It goes back into evaluating the workplace as a whole, looking at the severity of the conduct, looking at whether it was physically or physically threatening or humiliating. Here, and this actually goes to a fact in our second batch of disputes regarding how the city's racial initiative operated, the initiative is the thread that connects all of this conduct. So it's not just that 2017 incident, your honor. Mr. Demert has reported that there were also other things that came up in trainings in how he was treated in the work environment. So for example, in one training in 2019, Mr. Demert was forced to attend a training where he was told, quote, white people are cannibals. Racism is in white people's DNA and white people are the devil. And when he objected, he was called a white supremacist. That's 2 ER 61. The city claims that they excused Mr. Demert from participating in the original initiative, but his work evaluations never reflect the removal of that requirement. A supervisor got aggressive with him, called him a colonist, said that he had- Question. So Mr. Demert says that if he was told that white people enslave black people, that that statement is bigoted. So how is any historical event supposed to be discussed? Or can it not be discussed at all? Is that now completely off the table in the workplace? Or how would you phrase white people enslave black people if you're talking about slavery in the United States in an unbigoted way, according to Mr. Demert? Your Honor, those discussions are not off the table. And this case does not, is not going to be one that delineates where that limit falls. But what the focus is on is how the city of Seattle implemented its own trainings and how they impacted Mr. Demert and impacted the conditions of his work environment. So however, whatever the limit is, Your Honor, it's not how the city of Seattle did these trainings. Because in addition to that, when he objected- I'm sorry, I think I misheard. So you're not saying DEI training programs per se are discriminatory. You're saying how it was done here in the city of Seattle was. Yes, Your Honor. And that is exactly the point that the district court brought up. It was trying to say that as a matter of law, the city's racial initiative was lawful. But that is not the law. And also, each work environment has to be analyzed for how these concepts are played out, whether employees are discriminated. And again, these all go to the factual disputes here, the voluntariness of the racial caucuses. The city's own HR director admitted in his deposition that there were trainings that discriminated against who could go there. The city's own 30B-6 witness said that, quote, they didn't know they couldn't attend. I ask you, under Morgan and Porter, if a discrete act is time barred, it can't be actionable. And it defines discrete acts, or Morgan does, as termination, failure to promote, denial of transfer, refusal to hire. So let me ask you about the August 2015, where Mr. Demart asserts that the city hired a person of color instead of him. Would that count as a time barred discrete act? As a time barred discrete act, yes, Your Honor. But it would not be barred under the Morgan case for purposes of evaluating the racially hostile work environment, and also for evaluating how the city's racial initiative actually played out. So it goes to both categories. What about the 2016 failure to promote Mr. Demart? Time barred discrete act or not? As a discrete action, yes, Your Honor. But those can come in as evidence of a racially hostile work environment. Yes, I'm sorry. I want to ask you one more. What about the April 2017, asking Mr. Demart to step down from a lead position so a person of color could be promoted? Is that a time barred discrete act? That would be as well, Your Honor. But the same concept applies. Can I ask you, how does that take shape? If you say, okay, I'm not going to say it's an actionable event or incident, but it still gets considered. So how does that come in? Does it come into the jury as evidence? And then there's a limiting instruction that says all of these acts, you can't consider. How does that actually play out? Yes, Your Honor. So under Morgan, as long as there is one discrete act that falls within that 300-day timeline, the others can come in for evidence of, again, the pervasiveness of the hostility in the work environment, whether Mr. Demart felt it was personally humiliating, how employees were treated, how the city implemented it. So would there be a limiting jury instruction as to the purpose for which these time barred acts can be considered? There would be an instruction that would say there's not an independent cause of action to file for these specific discrete actions, but all of these actions can be considered as evidence of racial hostility for purposes of Mr. Demart's claims and also to counteract the city's contention that it did not discriminate against its employees. And it impacts both buckets of facts. What do you do with the fact that we're talking about, I think, an eight-and-a-half-year period of his employment, and we've got a fair number of incidents, but they're spread out over a very long time, and some of those that are asserted seem to me pretty innocuous, some of them fairly severe, but we're talking about eight-and-a-half years here. Yes, Your Honor. There is a long time in which these incidents occurred, but with purposes of the ones that fall within that 300-day timeline when Mr. Demart filed this EEOC charge, you have within that time frame of his supervisor physically accosting him, getting in his face, physically going up to him, calling him a colonist, saying racially disparate language. You also have the fact that his supervisor... But that's the one that he's having the dispute over, whether or not the relative should properly be awarded benefits. That one's kind of a messy one. That's exactly, Your Honor. The fact that it is messy shows yet again it goes into these disputes of material fact. The judge cannot make credibility determinations. Yes, it is a messy one, but it's also it's not one of just sort of outright training program calling white people are the devil. No, they're having a workplace dispute where he's not willing to do, at least in his view, what she wants him to do. But if within that workplace context, Your Honor, racialized language comes up, which is exactly how employees are instructed, that is definitely an inference of discrimination that a fact finder can weigh whether or not they believe Mr. Demart's version or the city's version. It's a dispute of material fact. I get that, but I'm still troubled by the fact that we're talking about a long period of time in which we have several incidents that I'm totally on board with you. They're pretty bad, but it's a long period. It is a long period, Your Honor. But again, under Morgan, this is all evidence that can be used again to show exactly these types of environments and to contextualize all these racial allegations and disputes, Your Honor. Moreover, there are also disputes about whether the racial caucuses. Oh, I see that my my time has expired. I had a question. Yes, Your Honor. Because there's some argument whether Mr. Demart has standing for his equal protection claim because it's inserted in one of the briefs that he cannot show denial of equal treatment sufficient to establish injury and fact. And so because I think Mr. Demart declined invitations to participate in optional caucus meetings and he never pursued the formal process to start a caucus group of his own. And he was never turned away from a particular R.S.J.I. training because of his race. It seems like he wanted to attend training in 2018 to protest, but he never did. So I wanted before you sat down, I wanted to get your your response to that. Yes, Your Honor. So with respect to the equal protection claim, strict scrutiny applies because we're the city's racial initiative is not facially neutral. The city acknowledges that it uses racial classifications, that there are trainings targeted towards employees on the basis of race. And so it has to meet strict scrutiny. It doesn't collapse into just discriminatory intent because it's not facially neutral. Moreover, Your Honor, even if Mr. Demart did not ultimately attend that that training he was considering, he was precluded from starting his own non-race based affinity group. And he was essentially told to go to the very people that enforce that standard of whether these groups are applied. So again, these go to disputes of material fact on how this racial initiative is used, how these classifications are used to treat employees differently. And so strict, the city had to meet strict scrutiny scrutiny, Your Honor, and it did not. Okay, thank you. Thank you. Rachel Jankowski. Good morning, Your Honors, and may it please the court. My name is Rachel Jankowski, and I represent the United States as amicus here. The United States asked this court to reverse the district court's decision on Mr. Demart's hostile work environment claim and apply and ask it to remand to apply Title VII as written. The district court improperly applied a heightened rare and because of Mr. Demart's membership in a so-called majority group, which has no basis in Title VII's text and contradicts Supreme Court precedent. The error is evident for three reasons. First, the district court does not engage with the text of Title VII. Second, the district court downplays Mr. Demart's allegations. And third, the district court adds its own commentary and value judgments on policy programs rather than focusing on the evidence. And I'm going to ask you, I'm looking at page 18 of the order. It says the law places racial discrimination and private employment against whites on the same terms as racial discrimination against non-whites. I don't see that as treating discrimination against whites any differently. That's correct. That's the standard from McDonald, Your Honor. And as is the text in Title VII, which says that under section 2000E2A1, any individual cannot be discriminated against because of the individual's race. So McDonald was correctly quoted by the district court. But unfortunately, there are implications throughout the district court's decision and in the hearing for the motion for summary judgment that seem to imply that a different standard was used. You know, I can go through this entire, what is it, 40-page, 46-page order. There's a lot of citations to the legal standard that are correct. I mean, we could go through them one by one. It seems like you're raising, you know, the heightened standard from the background circumstances. That's not relevant to hostile work environment. That's for disparate treatment. Right. So I don't know why you're trying to import a disparate treatment concept into a hostile work environment claim. Well, on page two of the order, right from the very beginning, the court says that it must acknowledge what history and common sense tell us, that instances of discrimination against the majority are rare and unusual. Mr. Demert does not present that rare and unusual case here. And then later on the same page says, put plainly, more is required of Mr. Demert under the law to demonstrate an unlawful hostile work environment. More than what? More is required for him because of the racial group that he's in. More than what? You say more is required. That's comparative. More than what? Than a minority group plaintiff. I'm not sure I read it that way. So that's an inference that you're drawing. I'm not sure that that's clear from a reading. In your view, what should the district court have done differently? I'm not sure I understand. So the district court should have followed McDonald and never looked at... The district court did apply the normal McDonald framework to do the disparate treatment and retaliation claims. And it seemed it applied the normal standard for the hostile treatment work, hostile work environment claim. So I'm trying to figure out what is it that you disagree with and what he should have done differently. So when looking at the hostile work environment claim, this is, as Miss D'Agostino said, this is a totality of the circumstances type of test. And so the court does have to look at all these different instances that occurred here. And Miss D'Agostino had named a number of those. But unfortunately, it seems like, based on my second point, that the district court downplays those allegations and disregards things that Mr. Demart raised with his supervisors and about his supervisors. Can I just... The put plainly more is required sentence you just read, I'd like to read the It says the same is true about the sweeping claims Demart makes about his co-workers and supervisors allege race-based conduct, which lacks specificity and factual support. Put plainly more is required under the law to demonstrate an unlawful hostile work environment. I don't see in that section where he's saying because Mr. Demart is white, he has to do more than a person who is not. It's more of an inference. So based on the case of Dominguez-Curry, this court's decision, district court takes issue with the fact that a lot of these allegations are conclusory and generalized and talks about how... Which sometimes happens in these cases, correct? Correct. So here, I think one of the issues the court had was that there wasn't a certain date that Mr. Demart was able to put forward where some of these allegations apparently took place. But under Dominguez-Curry, no specific dates are actually required. When we were just talking, there was an eight and a half year time period which happened and the timing is relevant here. You agree? The timing is relevant. Right. And so if it's not clear, I mean, that factors into certain claims. Do you agree? Absolutely. Okay. So it seems... So go ahead and tell me your point on Dominguez. So the point is that specific dates don't have to be named. So obviously, general timelines, we need to know that. But the exact date that a specific thing happened doesn't have to necessarily be named. But I think that goes into the point that Judge Koh made in terms of how we read that more is required. I do not read that sentence in saying more is required of a white person than of a black person. That's fair enough. But that's contrary to what you said. Okay. But there is a quote on that exact same page about how majority group plaintiffs need to... that majority group plaintiffs and discrimination against them. It is a rare and unusual circumstance where that happens. And that echoes the test, the background circumstances test that was struck down in Ames. And so that is the concern here. That's not stating a test. The judge is stating a fact. He's saying they're unusual. Well, there's no empirical evidence that the district court cites to actually support that. And that's something that came up... You know, I'm not sure he needs to cite a whole long list of studies. He's a judge living in the world. And of course, a judge can use their common sense when they're judging a case. But at the end of the day, the fact of the matter is the fact that Mr. Demert was white and therefore deemed to be in a so-called majority group. That's the only reason why that rare and unusual language and commentary was even added into this order. And you say that. How do you back that up? I mean, that's a really significant allegation here. I'm trying to figure out what is it that you're drawing on to support that statement? Because, I mean, that's a question from a case that says these are rare and unusual circumstances if I'm understanding the case that you're citing. I'm not sure what case cites rare and unusual. That's a standard that the district court applied itself. And so it's similar to the background circumstances test. You're calling it a standard. I don't see it's a standard. He's just stating it as a fact. You then say, then he has a heightened standard. And I don't agree that he's saying there's a heightened standard. Saying that it's rare and unusual is simply a statement of fact. But then there are also value judgments that are made throughout the court's decision that talk about DEI programs generally, rather than talking about the specific program that was at issue here, this RSJI initiative. And so it seems, based on all of the different value judgments that the court makes about Mr. Deamer and about the DEI programs, there was some type of implied heightened standard. And I see I'm out of time. So I just wanted to, in closing, say that the Supreme Court in Ames made very clear what Title VII had already said, that there can't be any type of heightened standard added to a majority group plaintiff's claim under Title VII. So for these reasons and those in our amicus brief, the court should reverse the district court and instructed to apply Title VII as written and as came down in Ames, which was four months after this court made its decision. Thank you so much. Good morning, and may it please the court. My name is Sarah Tilstra, and I'm an assistant city attorney for the City of Seattle, representing the city on appeal in this matter. With me at council table is Seattle City Attorney Erica Evans. Like many employers in America, the city has implemented a program that recognizes our country's history of institutionalized racism and that seeks to eliminate barriers that this racism has erected for employees and constituents alike. Joshua Deamer, a white man, disagreed with many of these principles, as is his right. He engaged with his co-workers. So what's the educational purpose of a trainer provided by the city saying that all white people are cannibals, racism is in white people's DNA, and white people are like the devil? What's the educational purpose and workplace purpose of that kind of training? The city disputes that that that is a disputed issue of fact as to whether that... Well, then why should that go to the summary, go to the jury? That shouldn't have been resolved on summary judgment, right? If that's a dispute of fact. I disagree, Your Honor, as to the standard for a hostile work environment. That particular allegation that Mr. Deamer made that occurred in allegedly during a training is one incident. And a hostile work environment, you're looking at potentially multiple incidents. And together, those incidents have to be severe or pervasive such that they impact the terms and conditions of employment. And as Your Honors alluded to in questioning, we've got years and years of employment for Mr. Deamer with a smattering of incidents that the court should consider. Does that go against him or in favor of him? I mean, because it looks like our case law says when it happens over a period of time with some, you know, you don't need to be as severe. And maybe it seems like that's one takeaway from our case law. But you can have a very severe or a couple severe statements or circumstances in a short period of time. But in a longer period of time, if there's sort of a pattern, maybe it doesn't have to be so severe. And so here, it looks like there's about an eight-year time period of different things being alleged. So can you speak to that? Sure. I think it's also important to address the nature of much of his evidence in this case. So Mr. Deamer has made many sweeping conclusory generalizations about conduct he allegedly experienced. Those allegations don't contain the specificity necessary for the city to defend against them or for this court to consider them. Let's talk about the incident with his supervisor, Mr. Saeed. The city physically moved Mr. Deamer's desk to be away from Mr. Saeed and removed Mr. Saeed as Mr. Deamer's supervisor. So it seems that the city thought at least whatever happened between the two of them was severe enough to require physical distancing and removal of a reporting relationship. I don't believe that the city agrees that Mr. Deamer reported to Mr. Saeed. But in any event, yes, they moved Mr. Saeed's desk. And as a result, the city would argue that they addressed that particular issue. And Mr. Deamer testified that he didn't have any other problems with Mr. Saeed after that. So for many of Mr. Deamer's claims, the record citations simply do not say what he said that they say. And still other claims rely on documents that aren't cited to the district court below or documents that there was no evidence were ever used in a training Mr. Deamer attended or ever even seen by him outside of the searches and requests he did in furtherance of his EEOC claim and this lawsuit. This is not an issue of credibility for the fact finder to weigh. It is an issue of whether Mr. Deamer has put forth sufficient admissible evidence to support his claims. Summary judgment occurred at the end of discovery and Mr. Deamer had every chance to supply such evidence. He did not. What's your what are your best cases to support you on that? Um, the cases that we cited in the brief, um, the Manat and Vasquez and Cortan, um, I think those cases have much more significant, um, much more significant and severe, uh, incidents. And the court found that those cases were not sufficient to, um, how about Renaga? Um, I, I believe that that case was more, um, I believe that that case is, I don't have that one on the tip of my tongue. Your Honor, how about, how about, are you familiar with the Second Circuit's recent decision in Chislett? I am, Your Honor. So, so how is that case distinguishable from what we have here? Sure. Um, a couple of, a couple of things. Oh, one is Chislett had, had many specifics about actual actors and dates and incidents. Chislett did not say things like, this happened every single time I went to a training, something was said to me, or every day people said pejorative comments about white people. Um, Chislett had specific, uh, incidents to which she was referring to. And the harassing conduct was much more severe and occurred more frequently over the course of only a few years, right up until, um, uh, Ms. Chislett left. Can we, let's talk about Corton. That is one supervisor, one occasion. Let's talk about Manat. That's two incidents with coworkers. This has many more incidents and involves many supervisors and it involves a program that the employer is putting on. That seems different than at least Corton and Manat, where it's coworkers and not supervisors. There's only one incident or only two incidents. And here there's, there's a lot. Well, again, I think it's important to limit the court's inquiry to the actual incidents that are, um, admissible and properly before the court. So...  Well, let's talk about that. That would be actually really helpful. Okay. So, um, I mean, I can go through a list of what I think may be, um, at least, well, do you agree that with Porter and Morgan, you're allowed to consider as context incidents beyond what's, you know, you can consider time-barred discreet acts, for example. You don't have to limit yourself to just actionable incidents. I think the district court was pretty, I don't necessarily agree with that, Your Honor. I think that the district court specifically in its order on the motion to dismiss said, you know, discreet incidents before, um, I can't remember the exact date, but before I think 2019 cannot, um, cannot be considered. But I, okay, I'm looking at National Morgan, which that's a Supreme Court case, not a district court case. It says, nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim. Or Porter, a Ninth Circuit case, footnote four, of course, and this is talking about time-barred discreet acts still may be considered for purposes of placing nondiscreet acts in the proper context. So, it does seem like they could be considered, even if it may not be actionable. I think it's, as you pointed out in your questions to, um, counsel on the other side, I, I think in practice, how that would be implemented is difficult to say how, okay, you can consider this, but you can't actually award any, him damages on it. And, you know, he, these are discreet acts. He knew as of a certain time, okay, I'm being allegedly denied this, um, pay or I'm not being forced to step down and he didn't take action on those. And so, to be able to sort of backdoor, um, uh, his claim based on that, I, I don't think is, is appropriate there. Um, the, the admissible evidence about the city's RSJI program establishes that Mr. Deamer was taught about white privilege, institutionalized racism, and the impact of race on all aspects of daily life. Mr. Deamer was taught that while we all experience the impacts of structural racism, none of us asked for these impacts. None of us asked for these impacts. Mr. Deamer was not penalized for not meeting his RSJI requirements, nor was he forced to or prevented from attending affinity group meetings. The fact that he disagreed with some of RSJI's concepts or subjectively found it offensive to say that existing systems perpetuate better outcomes for white people does not make such teachings harassing or discriminatory. In fact, as ably explained by the district court and Amici filing in support of the city, educational DEI programs like RSJI can meaningfully reduce workplace bias in service of Title VII. All of those things may be true, but I have to say I am troubled this being part of the educational program where the trainer says white people are cannibals. Racism is in white people's DNA. White people are like the devil. That's not some random comment by a co-worker in the cafeteria. That's part of the training given by the city. I agree, Your Honor. If that did occur. I think at this point we're supposed to assume that it did. That's not an if. I agree. If that did occur, that is a troubling and problematic incident and would be one of the things that Mr. Deamer could point to to say potentially, although we do not believe it's enough to say that he was subjected to a hostile work environment. But again, we don't believe that the case law. We don't believe that that is sufficient with the other incidents. So treating that as true, you say that's not enough? Correct. And if it's surrounded by other things, what happens? Well, it depends.  It depends on the nature of the other things. And I think in this case, as you pointed out, these other things are, you know, a comment in 2015 by Mr. Polito, another comment in 2016 by I mean, we're talking about isolated a smattering of incidents that are not connected to each other. I'd also like to talk about the disparate treatment and can I can I ask you a question? The district court considered Mr. Deamer's declaration and his February 20th, 2020 email about the incident with his supervisor, Mr. Said, but didn't consider the August 31st, 2021 email. And wasn't that an error not to consider the August 31, 2021 email? And also seemed to make a credibility determination, which shouldn't be done on summary judgment and didn't seem to make inferences in favor of the non-moving party. Aren't all of these errors, at least as to the Said incident? I don't. I agree that a district court should not be making credibility determinations on summary judgment. I think that in this instance, the district court was looking at this email, this contemporaneous email that was sent by Mr. Deamer and saying there was no discussion in it of these things. And now after the fact, he's he's mentioning all these other items. So I don't think that that was error by the district court. But even if it was going going back to the city's response, the city said, OK, we're going to move Mr. Said further away from your desk. And Mr. Deamer admitted that there were no incidents with Mr. Said after that. For the equal protection, I claim, if the court does not apply strict scrutiny, how would the court resolve the equal protection claim? So the strict scrutiny applies when there's a racial classification. There's not a racial classification here. The city, the city contends that because all of Mr. Deamer's Title seven claims fail, his equal protection claim fails as well. But yes, the racial classification, that's an act such as making a hiring decision or a school admission decision based on race, not discussing race in the workplace. Mr. Deamer provides no authority for the proposition that simply recognizing that plays a significant role in our society constitutes any sort of classification, racial or otherwise. And then, as your honor alluded to during the opening argument, Mr. Deamer never tried to attend any affinity groups or trainings aimed towards employees of color. He was never prevented from that. These is undisputed that these were voluntary and not mandatory. And there's no evidence there was any reward associated with joining an affinity group. And therefore, we don't believe that Mr. Deamer, that his equal protection claim has merit. Let me ask you before your time is up, if you could respond to Ms. Jankowski's arguments here regarding the district court order that I think the allegation is that it went beyond the normal McDonnell Douglas framework with respect to the disparate treatment and retaliation client claims. Yes, there is no evidence in the district court's order that it did anything other than properly apply McDonnell Douglas standard. Multiple points in the order, and I have that laid out in the brief. You know, the district court says controlling precedent makes clear that the legal protections against workplace discrimination apply with equal force, regardless of the plaintiff's race. This is, you know, and then the district court even acknowledges the circuit split, which existed at that point and says, but we don't need to decide that right now under the more, you know, strict standard under McDonnell Douglas, his claims fail. So this argument about an inference and, you know, we can imply that the district court did this, it's counter to the plain language of the opinion and the city does not believe that it holds water. Thank you very much. I think you're out of time, but I'll give you one minute. Your Honors, from listening to the other side, we heard a tale of a different city. Before you is the tale of two cities, and that is why this should not have been resolved on summary judgment. The city has brought before your attention numerous different factual disputes that they contend are different from our own. And in addition to that, your Honors, they're for purposes of looking at the district court also failed to credit direct and circumstantial evidence of discrimination when evaluating Mr. Demert's claims. And so in this instance as well, I'd also like to bring this court's attention to the documents to exhibit 6, 9, 19, 20, 21, 22 were all properly before the court. They were either cited or in the district court's order. And if this court were not to consider 3, 18, 30, 33, 37, and 42, that doesn't change the fact the remaining record that does create disputes of material fact. And the court also failed to consider the city's own 30B6 witnesses statement that employees were discriminated on the basis of race. This court should reverse judgment. Thank you. Ms. Jankowski, do you want 30 seconds? Thank you, Your Honor. We think that the Chislett case is the best example of a circuit court applying the proper standard under the hostile work environment claim. And this is a case that came down after Ames. So the district court decided this case about four months before Ames was decided. And it was a very similar situation in the Chislett case dealing with a number of different about implicit bias trainings, having very racialized tones throughout it, comments that were made after the trainings and segregated trainings. And that's a similar situation to what happened here. And the court reversed the district court's decision there. And so we're asking that this court also follow what the Second Circuit did and reverse summary judgment here as well. Thank you. Thank you. Thank you. So, Ms. D'Angostino, I don't know if I pronounced that correct. Ms. Jankowski and Ms. Tilstra, thank you very much for your argument presentations. The case of Joshua Demert v. City of Seattle and United States of America is now submitted. And that concludes our docket for today. Thank you.
judges: MURGUIA, FLETCHER, KOH